## RALPH PAYNE v. STATE.

No. A-9085. Dec. 5, 1936.
(63 Pac. [2d] 779.)

224

Clearman & Ellis and Francis K. Trimble, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Jess L. Pullen, Asst. Atty. Gen., for the State.

DAVENPORT, J. Ralph Payne, the defendant in the lower court, was by information charged with mayhem; was tried, convicted, and sentenced to a term of four years in the state penitentiary, from which judgment and sentence he appeals.

Arthur Trammell, a witness for the state, in substance stated:

"I am acquainted with Ralph Payne and Orval Grim. On June 22, 1935, I was running a filling station at 283 South Cheyenne. About 9 o'clock in the morning Ralph Payne came to the filling station and told me to give him four gallon of gasoline. While I was servicing the car, Orval Grim came up, got out of his car, and went into the filling station. Ralph Payne also went in; they ask me if I had a deck of cards and I told them I thought I had; they went into the back room and was playing cards. Later I heard a noise back of the filling station and ran back there and found Ralph and Orval in a clinch down on the floor; Orval had Ralph's head between his legs, and as I entered the door hit him in the face with his fist and on the back with a bottle. I separated them, they stood there and cussed each other for a while, calling each other vile names. I told Ralph to get out; and Ralph said he was sorry. I also told Orval to get out; he wanted to argue with me. I walked slowly toward the front part of the building. Before I got to the front of the building Orval was calling me to come there; when I got there Ralph was in a stooping position, I put my hand on him and told him to turn Orval loose, and to not hit him any

more. Orval was lying on the floor; I did not see anything in Ralph's hand at that time but later I saw a pair of pliers; I told Ralph to get out, and he said 'Grim—you s—— o— b——, you have had enough—' Grim was sitting up by that time; I noticed Grim's eye was standing out like the whole eyeball was out of the eye. I did not remember seeing any other wounds on his face.

"I saw Ralph after they went to fighting the second time; I did not see him go to the car to get the pliers. I did not see him go back to the room when he engaged in the fight the second time. Shortly after I separated them the second time I saw Ralph had a pair of pliers in his hand."

All the state's testimony shows that Grim and Ralph went into the back room at the filling station and engaged in a card game; that an argument came up and Grim had Payne down when Arthur Trammel separated them, and Payne went out, and two witnesses testify he went to his car and got a pair of pliers and went back into the room. There is no dispute in the testimony on the question that the defendant Payne struck Grim with the pliers, and gouged or punched out one of his eyeballs, which had to be removed, as the doctors could not get it back in the socket.

The defendant admits he met the prosecuting witness, Grim, at the filling station; that they went into the back room at the filling station and engaged in a card game, which grew into a row and a fight, and Arthur Trammell separated them, the defendant claiming Grim owed him $5. The defendant admits that after the first fight he staggered toward the front door, and says he was addled, that he might have gone as far as the front door.

"I thought I would go back and take another shot, I thought Orval was gone; when I went back Orval made

this remark, 'you damn little s—— of— b——, I will whip you any way you want to.' I realized I had the pliers and reached back and got them and says, 'You are trying to cover too much territory.' I first hit him with my fist and then hit him with the pliers, and that knocked him and the chair back together and he fell on his face. I hit him but once with the pliers."

The foregoing is in substance the testimony.

The defendant has assigned ten errors alleged to have been committed by the trial court. In his brief he argues but one, and that is: "That the verdict of the jury, and punishment fixed by said jury, and judgment of the court are not justified by the evidence. The punishment fixed is excessive and resulted from passion and prejudice rather than from sound and discreet deliberation of the said jury."

The defendant urges that the prosecuting witness, Grim, was the aggressor in the first altercation, and for that reason he was entitled to defend himself. The proof of the state in this case shows conclusively that defendant, when Arthur Trammell separated them, left the scene of the difficulty, and went through a hall into another room, and witnesses say the defendant went to his car and got a pair of pliers; the difficulty, so far as the prosecuting witness Grim was concerned, was over; that the defendant again entered the room where Grim was and the fight was renewed. There is no justification shown for the defendant returning to the room where Grim was, and the proof clearly shows that he went to the car for the purpose of getting the pliers to assault and beat Grim with; that when he went back into the room where Grim was he knocked him down and punched out one of the balls of his eyes, necessitating the removal of the same, by reason of the injury he lost one of his eyes.

There is no testimony to justify the action of the defendant. The jury heard the testimony and saw the witnesses, and had an opportunity to judge of their demeanor while on the stand. There is no complaint made as to the law given to the jury by the court. The only argument urged strongly by the defendant is that the punishment is excessive. With this contention we cannot agree.

It is unfortunate that men lose their temper and fight, bruise, and injure each other, but there is no justification in this record for the defendant in this case, after he left the scene of the difficulty and went outside of the room, to go to his car and get his pliers and go back and beat up the prosecuting witness as the proof shows he did, causing him to lose his eye, thereby maiming and disfiguring him for life.

In Parnell v. State, 39 Okla. Cr. 361, 265 Pac. 660, in the first paragraph of the syllabus, this court said:

"Where there is evidence from which a jury may reasonably and logically find the guilt of an accused, the weight and credibility of such evidence is for the jury, who see and observe the witnesses, and this court will not substitute its judgment in such case for that of the jury." Carruthers v. State, 60 Okla. 173, 63 Pac. (2d) 118, and Pruitt v. State, 60 Okla. 210, 63 Pac. (2d) 776.

The defendant was accorded a fair and impartial trial. The court correctly advised the jury as to the law applicable to the facts. There are no errors in the record to justify this court in modifying or reversing the judgment. The judgment of the trial court is affirmed.

EDWARDS, P. J., and DOYLE, J., concur.